DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Deputy
SCOTT D. WIENER, State Bar #189266
Deputy City Attorney
1390 Market Street, 7th Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-4283
Facsimile:     (415) 554-3837

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
ALVIN YOUNG, ANNA PAYNE, AND DON GARCIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ERNEST JACKSON AND DAILY JACKSON, | Case No. CV-08-2588 CW |
|---|---|
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT** |
| vs. | Date:    August 26, 2008<br>Time:    2 p.m.<br>Hon. Claudia Wilken |
| CITY AND COUNTY OF SAN FRANCISCO, HONS YUNG, TESS CYNDEKI, JENNIFER NGO-CHAN LINDA GORHAM, DEPUTY YOUNG, ANNA PAYNE, DON GARCIA, AND DOES 1-40, INCLUSIVE | |
| Defendants. | |

JOINT CASE MANAGEMENT STATEMENT                                               n:\lit\li2008\081241\00503678.doc
Jackson, et al. v. CCSF, et al. – USDC No. CV-08-2588 CW

The parties submit this Joint Case Management Statement in anticipation of the August 26, 2008, Case Management Conference.

1. Jurisdiction and Service

The Court has subject matter jurisdiction over this case pursuant to its federal question jurisdiction and supplemental jurisdiction. Plaintiffs filed this lawsuit in Superior Court, and defendants removed it. All parties have appeared.

2. Facts

Plaintiffs' Version

On March 29, 2007, at approximately 11:25 a.m. plaintiffs Ernest Jackson and Daily Jackson arrived at the clerk's office of the San Francisco Court at 400 McAllister Street. Both plaintiffs (unrelated) were Reverends and active in their respective churches. Daily Jackson was visiting from Texas and was at the court make a filing related to probating his relative's estate. Ernest Jackson, from San Francisco, came along to show Daily Jackson where our local courthouse and clerk's office were.

Plaintiffs began their transaction at the clerk's window at approximately 11:45 a.m. Daily Jackson paid the clerk $390 in cash for his $385 filing fee. Ernest Jackson never paid the clerk any cash or had anything to do with the transaction. The clerk told Daily Jackson he would have to get change. He went back and told his supervisor he received the cash from "Two African-Americans." The clerks checked the bills provided by Daily Jackson and found no suspect issues with security strips or water marks. The clerks used a counterfeit marker on the bills and the bills did not test as counterfeit. The clerks, however, were still "suspicious." The initial clerk, Hons Yung, returned to the window "so that my supervisor had more time to contact the appropriate authorities." The clerks summoned the San Francisco Sheriff's Department. Hons Yung indicated "minutes later, two bailiffs approached the two individuals and pulled them aside for questioning."

Approximately five San Francisco Sheriff's Deputies surrounded the plaintiffs in full view of the public—some of whom were congregants at the church where Ernest Jackson was pastor. Both plaintiffs were ordered to produce identification and they complied. Both plaintiffs were ordered to remove all cash from their pockets and subject the cash to search by the deputies. Plaintiffs complied

JOINT CASE MANAGEMENT STATEMENT  n:\lit\li2008\081241\00503678.doc
Jackson, et al. v. CCSF, et al. – USDC No. CV-08-2588 CW

1  with this order too.  The Sheriffs took both plaintiffs' money and marked the bills with a counterfeit
2  detection pen.  None of the bills tested "counterfeit."  In spite of this, plaintiffs' detention continued.
3  They were escorted through the back of the clerk's office, to an elevator where a civilian was ordered
4  out.  They were then taken to the fourth floor, separated, and locked up in separate holding cells.

5  The Sheriffs at some point contacted the Secret Service who confirmed all the bills (those
6  originally offered by Daily Jackson and those taken from both Daily and Ernest Jackson) were
7  legitimate.  Plaintiffs were then unlocked and set free to complete their transaction at approximately
8  3:15 p.m.

9  <u>Defendants' Version</u>

10  On March 29, 2007, Plaintiffs provided several hundred dollar bills to court clerk staff at the
11  San Francisco Superior Court at 400 McAllister Street.  Plaintiffs were paying a $390 court filing fee
12  relating to the probate of a relative's estate.  Court staff suspected that the bills were counterfeit, given
13  that they had an old date on them but appeared newly printed.  Court staff used a counterfeit detector
14  pen on the bills, and the pen indicated that the bills were suspect.

15  Court staff then summoned San Francisco Sheriff Deputies and informed them of the
16  situation.  The deputies also suspected that the bills were fake, given their old dates and new
17  appearance, in addition to the fact that Plaintiffs had various bills that appeared to be fake.  Plaintiffs
18  had several hundred dollars in fake-looking bills in addition to the $390 they were attempting to use
19  to pay the filing fee.

20  The deputies decided to investigate further.  Plaintiffs were asked if they wanted to stay where
21  they were, in public view, or go to a more private area in order to avoid the embarrassment of being
22  detained publicly.  Plaintiffs indicated that they preferred to go somewhere more private.  The
23  deputies then escorted Plaintiffs to a holding area in the courthouse.  Plaintiffs were not cuffed, and
24  no force was used on them.

25  Deputy Don Garcia then contacted the United States Secret Service and spoke with an agent.
26  Deputy Garcia provided the agent with information that the agent requested, and the agent then
27  informed Deputy Garcia that the bills likely were authentic.  The deputies then promptly released
28

1 Plaintiffs and provided them with certificates of release.  The entire incident lasted slightly more than
2 an hour.
3     Plaintiffs subsequently explained to the deputies that they had obtained the bills from their
4 relative's home.  The bills had been stored in a book, which explained why they were old yet
5 appeared new.

<u>Principal factual issues in dispute</u>

The circumstances surrounding Plaintiffs' detention

Whether Plaintiffs engaged in the conduct described in Defendants' version.

Whether the defendants engaged in the conduct described in Plaintiffs' version.

The nature and extent of Plaintiffs' injuries.

3.    <u>Legal Issues</u>

Whether Defendants had reasonable suspicion to detain Plaintiffs.

Whether Defendants are entitled to qualified immunity.

Whether Defendants caused any of Plaintiffs' alleged damages.

Whether Plaintiffs were at fault for any damages that they sustained.

Whether any *Monell* liability exists.

Whether Defendants are liable under California law.

Whether Plaintiffs complied with California's Government Code claim requirement.

Whether Defendants violated Plaintiffs' civil rights.

What damages Plaintiffs allegedly suffered.

4.    <u>Motions</u>

Defendants may move for summary judgment or partial summary judgment.

5.    <u>Amendment of Pleadings</u>

The parties do not anticipate amendments to the pleadings.

6.    <u>Evidence Preservation</u>

The parties have preserved evidence.

7.    <u>Disclosures</u>

The parties are engaging in initial disclosures pursuant to Fed. R. Civ. P. 26.

8. <u>Discovery</u>

The parties will engage in written and deposition discovery. Defendants may seek one or more medical evaluations of Plaintiffs, depending on what injuries they are claiming.

9. <u>Class Actions</u>

This case is not a class action.

10. <u>Related Cases</u>

The parties are unaware of related cases.

11. <u>Relief</u>

Plaintiffs are seeking damages, punitive damages, attorneys fees, and costs. Defendants are seeking attorneys fees and costs.

12. <u>Settlement/ADR</u>

The parties have not agreed to a form of ADR and have requested a call with ADR staff.

13. <u>Consent to Magistrate Judge for all Purposes</u>

The parties do not consent to trial of this case by a United States Magistrate Judge.

14. <u>Other References</u>

The case is not suitable for such a reference.

15. <u>Narrowing of Issues</u>

The parties are not in agreement about any of the legal issues in this case.

16. <u>Expedited Schedule</u>

This case is not suitable for an expedited schedule.

17. <u>Scheduling</u>

The Court will need to set dates for the close of discovery, summary judgment (hearing and briefing), and expert disclosures/discovery.

18. <u>Trial</u>

The parties propose a trial date on in the fall of 2009.

19. <u>Disclosure of Non-Party Interested Entities or Persons</u>

The parties are unaware of nonparties with such an interest in this lawsuit.

Dated: August 19, 2008

             DENNIS J. HERRERA
             City Attorney
             JOANNE HOEPER
             Chief Trial Deputy
             SCOTT D. WIENER
             Deputy City Attorney


        By:/s/ Scott D. Wiener
             SCOTT D. WIENER
             Attorneys for Defendants
             CITY AND COUNTY OF SAN FRANCISCO,
             ALVIN YOUNG, ANNA PAYNE, AND
             DON GARCIA


Dated: August 19, 2008

             EDMUND BROWN
             Attorney General
             HARRY GOWER, III


        By:/s/ Harry Gower, III
             HARRY GOWER, III
             Attorneys for Defendants
             HONS YUNG, TESS CYNDEKI, JENNIFER NGO-CHAN, AND LINDA GORHAM


Dated: August 19, 2008

             LAW OFFICES OF JOHN FITZPATRICK VANNUCCI


        By:/s/ John Fitzpatrick Vannucci
             JOHN FITZPATRICK VANNUCCI
             Attorneys for Plaintiffs ERNEST JACKSON AND DAILY JACKSON